UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TERRY LaCROIX,

        Plaintiff,

  v.                                                          CAUSE NO. 3:22-CV-617-DRL-MGG

RON NEAL *et al.*,

        Defendants.

OPINION AND ORDER

Terry LaCroix, a prisoner without a lawyer, filed a complaint alleging constitutional violations under 42 U.S.C. § 1983. (ECF 1.) Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. LaCroix is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. LaCroix is an inmate at Indiana State Prison (ISP). His complaint is in places difficult to follow. As best as can be discerned, he claims that on September 25, 2020, he fell in his cell and "broke & dislocated" his left arm. He was brought to the medical unit

by correctional officers.[1] When he arrived, his left wrist was handcuffed to the guardrail of the stretcher. Nurse Danya Hanson tried to get his vital signs but he "wasn't registering." He told her his left arm was broken and she would have to get his vital signs from his right hand, which she did. He claims his "vitals were 60/30." Nurse Hanson then tried to run an intravenous (IV) line, but he told her she could not put it in his left arm "because [it] would have backed up into my heart & basically drowned." She then put the IV in his right arm. She told him, "I'm trying to save your life," to which he responded, "[N]o you're killing me." He claims that because no one would help, him, he "proceed[ed] to reset my own left arm that had a 75 % break at the base of the Kaliva & was out of socket."[2]

He then passed out and when he came to, he allegedly overheard Nurse Hanson telling some of the correctional officers present that "if he turns blue in the face again, we will quietly step out in the hall & just simply let him fade away." At that point, Mr. LaCroix "came unglued" and "die[d] a 2nd time." When he regained consciousness, he allegedly heard correctional officers talking about his daughter and threatening to kill her, so he "threw a front kick" at them. He was then restrained by staff, which caused him to "end up dying a 3rd time." Nurse Hanson and Nurse Brenda (last name unknown) gave him a shot of adrenaline, which revived him, and Nurse Brenda told him an EMT

---

[1] He is proceeding separately on a claim that two guards who escorted him to the medical unit used excessive force against him. *See LaCroix v. Neal*, 3:22-CV-193-JD-MGG (N.D. Ind. filed Mar. 10, 2022).

[2] It is unclear if he is referring to the clavicle bone, or something else.

was on the way. It can be discerned that medical staff thought he had overdosed on a narcotic, as they gave him Narcan, an antidote for overdoses.

It appears he was then taken to a holding cell in the medical unit. He asked Correctional Officer Washington (first name unknown) for a blanket or a shirt, as he only had on shorts. She allegedly said no. Nurse Tiffany Turner came into the holding cell, but he complains she did not take his vital signs, though she took the vital signs of another inmate who was in the medical unit for a drug overdose. He claims Officer Washington gave him a "food tray she spit in," while she gave the other inmate "5 regular trays." Several correctional officers allegedly arrived to question him about whether he had tried to assault an officer (presumably when he kicked at staff), but he told them he was only trying to protect his daughter. He claims the officers were part of a "hit squad" and he felt threatened by this incident.

It appears that he remained in the holding cell for most of that day, during which time he claims to have asked Officer Washington for pain medications several times, which she allegedly refused. After approximately 14 hours, another inmate reported to medical staff that Mr. LaCroix had not overdosed and instead had fallen in his cell while exercising. Dr. Nancy Marthakis then instructed Nurse Turner to give him a shot of morphine. He claims Dr. Marthakis then went home without doing a "follow up," and that Nurse Turner did not give him the morphine as the doctor directed. He claims that for the next 10 days he was left in this state "with no pain meds." He claims that during this period he tried to get help from Warden Ron Neal and other high-ranking officials, but his letters "went unanswered." After ten days he underwent an x-ray, which

3

allegedly "confirm[ed] a 75% break at the base of my Kalivia, with a small gap between the bone socket."

Based on these events, he sues 20 defendants, including Dr. Marthakis, Nurse Turner, Nurse Brenda, multiple correctional officers, Wexford of Indiana LLC (Wexford), the Warden, the Deputy Warden, and other high-ranking prison officials. He claims their actions led to "multiple deaths" and required him to "treat myself from my life threatening injuries." He seeks $45 million in damages and other relief, including "criminal charges on defendants who broke the law."

The court finds many of Mr. LaCroix's allegations in the realm of "fantastic" or "delusional." *See Neitzke v. Williams*, 490 U.S. 319, 328 (1989); *Gladney v. Pendleton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002). This includes his allegation that medical staff tried to kill him, that they forced him to reset his own dislocated arm, that correctional staff threatened his daughter, and that he was harassed by a prison "hit squad." To the extent he is trying to initiate criminal charges against any of the defendants, he has no authority to do so. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence . . . a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *United States v. Palumbo Bros., Inc.*, 145 F.3d 850, 865 (7th Cir. 1998) ("[C]riminal prosecution is an executive function within the exclusive prerogative of the Attorney General.").

Stripping away those allegations, what remains is his claim that medical staff was deliberately indifferent to his medical needs. Under the Eighth Amendment, inmates are entitled to adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2

4

F.4th 716, 722 (7th Cir. 2021). However, they are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible," *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. The court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). Nevertheless, ignoring an inmate's complaints of pain or delaying in providing necessary treatment can amount to deliberate indifference, particularly when "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks omitted).

The bulk of Mr. LaCroix's allegations reflect that medical staff did try to provide him care after he was injured, taking his vital signs several times and giving him an IV, Narcan, and adrenaline. He alleges, however, that Nurse Turner intentionally ignored Dr. Marthakis's order to give him morphine, and that he was denied pain medications during the ten-day period he was waiting for an x-ray, which allegedly showed that he had a broken bone. It is also unclear why an x-ray was not performed earlier, given Mr. LaCroix's allegations about having a visibly injured and dislocated arm. It can be discerned that Dr. Marthakis was providing his medical care during this period. He will

5

be permitted to proceed against Nurse Turner and Dr. Marthakis on a claim for damages under the Eighth Amendment, but his claims against the other medical staff and correctional officers will be dismissed.[3]

As to the Warden and other high-ranking prison officials, their only alleged involvement was that Mr. LaCroix wrote them letters complaining about his medical care. A defendant "cannot be hit with damages under §1983 for not being ombudsmen." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). In other words, a prisoner cannot simply "write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign" is unsuccessful. *Id*. Additionally, as non-medical personnel, they were entitled to rely on medical staff's judgment regarding what care was appropriate. *Burks*, 555 F.3d at 595; *Miranda v. Cnty. of Lake*, 900 F.3d 335, 343 (7th Cir. 2018). These defendants will be dismissed.

He also names Wexford, the company that previously employed medical staff at Indiana prisons. Wexford's contract with IDOC terminated in July 2021 and it was replaced by Centurion Health (Centurion). *Baldwin v. Westville Corr. Facility*, No. 3:21-CV-682-DRL-MGG, 2021 WL 5759136, 2 (N.D. Ind. Dec. 3, 2021). Wexford could be held liable for constitutional violations occurring during the time it provided medical care at Indiana

---

[3] If he is claiming that Officer Washington improperly denied him pain medication, there is no plausible basis to infer that this correctional officer had the authority to prescribe medications. In addition, it is evident that he was under the care of medical professionals during this period, and Officer Washington was entitled to defer to them regarding the appropriate treatment for his injury. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

prisons. *See Hildreth v. Butler*, 960 F.3d 420, 422 (7th Cir. 2020). However, there is no general *respondeat superior* liability under 42 U.S.C. § 1983, and Wexford cannot be held liable solely because it employed medical staff at Mr. LaCroix's prison. *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020).

A private company performing a public function can be sued under *Monell v. NYC Soc. Serv.*, 436 U.S. 658 (1978), but such entities "cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). The purpose of the official policy requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). "At the pleading stage . . . a plaintiff pursuing [a *Monell*] theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

Mr. LaCroix does not allege that an official policy or custom of Wexford caused him injury. *See Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016) (*Monell* requires a plaintiff to show that an official policy "was the 'moving force' behind his constitutional injury"). Rather, he describes injuries caused by the wrongdoing of individual medical staff. Nor does he describe any other incidents besides this one involving his own medical care. Isolated instances of wrongdoing by a few staff members cannot form the basis for a *Monell* claim. *Howell*, 987 F.3d at 654. This corporate defendant will be dismissed.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed on an Eighth Amendment claim against Dr. Nancy Marthakis and Nurse Tiffany Turner in their individual capacities for money damages for denying him adequate medical care after he broke his arm in September 2020;

(2) DISMISSES all other claims;

(3) DISMISSES Ron Neal, Danya R. Hannon, Dawn Buss, Pam Bane, Brenda, Sherri Fritter, Lott, Jackson, Cook, Name Unknown, Teague, Snovall, Washington, Parnell, Albright, Estavezze, Wexford, and Warlow as defendants;

(4) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Dr. Nancy Marthakis and Nurse Tiffany Turner at Wexford of Indiana, LLC, and to send them a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(5) ORDERS Wexford of Indiana, LLC, to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent this information is available; and

(6) ORDERS Dr. Nancy Marthakis and Nurse Tiffany Turner to respond, as provided in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

November 8, 2022  *s/ Damon R. Leichty*
Judge, United States District Court