UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TERRY LACROIX,

    Plaintiff,

v.                                       CAUSE NO. 3:22-CV-617-DRL

NANCY MARTHAKIS and TIFFANY
TURNER,

    Defendants.

OPINION AND ORDER

Terry LaCroix, a prisoner without a lawyer, is proceeding in this case "against Dr. Nancy Marthakis and Nurse Tiffany Turner in their individual capacities for money damages for denying him adequate medical care after he broke his arm in September 2020[.]" ECF 8 at 8. The defendants filed a motion for summary judgment. ECF 65. Mr. LaCroix filed a response, and the defendants filed a reply. ECF 74, ECF 75, ECF 84. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278,

282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate

2

that the person responsible actually did not base the decision on such a judgment."

*Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-698. Negligence, incompetence, or even medical malpractice do not amount to deliberate indifference. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004).

A prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). When the defendant has provided some level of care for a prisoner's medical condition, to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

A. *Nurse Turner.*

Both parties agree Nurse Turner didn't provide Mr. LaCroix any treatment for his injured arm on September 25, 2020. The court thus accepts this as undisputed. Nurse Turner argues she is nevertheless entitled to summary judgment because she didn't know

3

or have any reason to know Mr. LaCroix needed treatment for his arm on September 25. ECF 66 at 9-16. Mr. LaCroix responds Nurse Turner was deliberately indifferent for providing him no treatment for his injured arm on September 25 despite knowing he required treatment. ECF 74-2 at 19-24.[1]

Nurse Turner provides an affidavit and Mr. LaCroix's medical records. Around 4:00 am on September 25, 2020, Mr. LaCroix was seen at the medical unit and examined by Nurse Dayna Hannon. ECF 67-5 at 3; ECF 67-4 at 354-56. Nurse Hannon recorded that Mr. LaCroix was "under the influence" and "unresponsive to verbal and physical stimuli," and that she administered Narcan. *Id.*[2] She took his vitals, placed him in a holding cell for further observation, and noted no signs of pain or distress. *Id.* When Nurse Turner arrived for the day shift around 7:00 am, she reviewed Nurse Hannon's report and went to check Mr. LaCroix's vitals. ECF 67-5 at 4, 22; ECF 67-4 at 352. However, she reported she didn't feel safe assessing him at that time because he was screaming and charging toward the cell front. *Id.* At 12:00 pm, Nurse Turner again went to check on Mr. LaCroix and noted he was cursing at staff and demanding to be returned to his cell. ECF 67-5 at 5, 22-23; ECF 67-4 at 352. Nurse Turner didn't feel Mr. LaCroix should be released to general population because of his aggressive behavior. *Id.* She checked on Mr. LaCroix again at 1:45 pm and 4:54 pm, but on both occasions she didn't feel like she could release

---

[1] Mr. LaCroix argues only that Nurse Turner denied him adequate medical care for his injured arm on September 25, 2020, and does not allege she denied him adequate medical care for his arm on any other date.

[2] Mr. LaCroix disputes he was under the influence or unresponsive, but doesn't dispute that Nurse Hannon recorded this information in his medical records.

4

him due to his aggressive behavior. ECF 67-5 at 23; ECF 67-4 at 351-52. She routinely checked on Mr. LaCroix throughout her shift to ensure he was in stable condition, but was unable to enter his holding cell to conduct a physical examination due to his erratic, belligerent, and dangerous behavior. ECF 67-5 at 24. At no time did Mr. LaCroix complain to her that he was experiencing arm pain or had sustained an arm injury. *Id.* at 24-25. Accordingly, she never examined or provided any treatment for his arm. *Id.*

Nurse Turner argues she was not deliberately indifferent to Mr. LaCroix's arm injury on September 25 because she never was informed of the injury and didn't know he required any treatment for his arm. ECF 66 at 9-16. Specifically, Nurse Turner attests she observed Mr. LaCroix on several occasions on September 25 but wasn't able to examine him due to his erratic behavior, and she never was informed by Mr. LaCroix or any other party that Mr. LaCroix was experiencing arm pain or had an arm injury. ECF 67-5 at 24-26.

In response, Mr. LaCroix argues Nurse Turner was aware of his arm injury on September 25 for two reasons. First, he argues that while he was in the medical unit on September 25, he asked numerous parties to "reset his broken/dislocated arm," was "begging & crying for anyone to help him," and "informed medical & staff of his broken arm." ECF 74-2 at 4, 19-21. But these vague allegations are insufficient to show Nurse Turner knew of his arm injury, as he does not allege he informed Nurse Turner of his arm injury or that Nurse Turner was ever present when he was asking for help. It is undisputed Nurse Turner was provided with Nurse Hannon's notes when her shift began, which stated only that Mr. LaCroix was being treated for being under the

5

influence and made no mention of an arm injury. It is also undisputed Nurse Turner was unable to physically examine Mr. LaCroix on September 25. Mr. LaCroix's vague assertions that he informed some members of medical staff of his arm injury is insufficient to show Nurse Turner knew of the injury.

Second, Mr. LaCroix argues Nurse Turner was aware of his arm injury on September 25 because Dr. Marthakis instructed Nurse Turner to examine him and provide him with pain medication and x-rays, but she refused Dr. Marthakis' instructions. ECF 74-2 at 10-11. But Dr. Marthakis attests she never gave Nurse Turner any such instructions. ECF 67-1 at 20. Mr. LaCroix provides only his own speculation regarding what instructions Dr. Marthakis gave Nurse Turner on September 25, and does not explain how he has any firsthand knowledge regarding what instructions Dr. Marthakis gave Nurse Turner.

Thus, because there is no evidence in the record that Nurse Turner was ever aware Mr. LaCroix required any treatment for his injured arm on September 25, 2020, no reasonable jury could conclude she was deliberately indifferent to this condition. Summary judgment is warranted in favor of Nurse Turner.

B. *Dr. Marthakis.*

Dr. Marthakis likewise offers an affidavit and Mr. LaCroix's medical records. On September 30, 2020, Mr. LaCroix submitted a Healthcare Request Form stating he injured his left arm on September 25 and requesting treatment. ECF 67-1 at 6; ECF 67-4 at 401. On October 2, 2020, Nurse Tanya Hoadley saw Mr. LaCroix in response to his Healthcare Request Form. ECF 67-1 at 6-7; ECF 67-4 at 344-46. An examination found he was unable

6

to raise his left arm and there was a large bruise over his bicep. *Id.* Nurse Hoadley contacted Dr. Marthakis, who ordered an x-ray of Mr. LaCroix's upper arm and a stock card for 24 tablets of Tylenol. *Id.*; ECF 67-4 at 345-47. The x-ray was performed that same day and found a "minimally displaced fracture" in the humerus without any dislocation. ECF 67-1 at 7 at 7; ECF 67-4 at 381. On October 5, 2020, an outpatient request (OPR) was submitted for an orthopedic consult. ECF 67-1 at 7; ECF 67-4 at 339-43. The OPR was approved by the Regional Medical Director, and Mr. LaCroix was scheduled to see an orthopedist on November 12, 2020. *Id.*

On November 12, 2020, Mr. LaCroix was seen by an orthopedist who diagnosed him with a nondisplaced fracture of his left humerus. ECF 67-1 at 10; ECF 67-4 at 394-96. The orthopedist recommended "conservative management with activity modification, anti-inflammatory medication, [and] gentle range of motion and home exercise program," provided Mr. LaCroix with recommended exercises, and instructed him to take Ibuprofen and Tylenol as needed. ECF 67-1 at 10; ECF 67-4 at 396, 398. When Mr. LaCroix returned from the appointment, Dr. Marthakis ordered additional diagnostic testing and submitted an OPR for a follow-up appointment with the orthopedist, but the Regional Medical Director deferred the OPR. ECF 67-1 at 11; ECF 67-4 at 326-30. Over the next few months, Mr. LaCroix was provided with Tylenol and nitro for pain management. ECF 67-1 at 12-15. Subsequent x-rays performed on November 25, 2020, and December 21, 2020, showed the fracture in Mr. LaCroix's arm was healing. ECF 67-1 at 12, 14; ECF 67-4 at 383, 402. An x-ray performed on April 19, 2020 found no evidence

7

of a fracture. ECF 67-1 at 15-16; ECF 67-4 at 384. A subsequent x-ray taken on February 23, 2022 likewise found no evidence of a fracture. ECF 67-1 at 17-18; ECF 67-4 at 386.

Dr. Marthakis argues she provided adequate treatment for Mr. LaCroix's arm injury by providing pain medication, sending him for x-rays, referring him to an orthopedist, and following the orthopedist's recommendations. ECF 66 at 16-24. Here, it is undisputed Dr. Marthakis treated Mr. LaCroix's left arm by providing him pain medication, sending him for numerous x-rays, referring him to an orthopedist, and following the orthopedist's recommendation of conservative management with activity modification and a home exercise program. To succeed on his claim, Mr. LaCroix must provide evidence this treatment was "plainly inappropriate." *See Hayes*, 546 F.3d at 524.

In response, Mr. LaCroix argues the treatment Dr. Marthakis provided for his arm injury was plainly inappropriate for several reasons. First, Mr. LaCroix argues Dr. Marthakis provided no treatment at all for his arm on September 25, 2020. ECF 74-2 at 24, 26. But there is no evidence Dr. Marthakis was involved in Mr. LaCroix's treatment on September 25, 2020, or that she ever was informed of his arm injury on that day. Specifically, Mr. LaCroix's medical records do not indicate Dr. Marthakis ever saw or examined Mr. LaCroix on September 25, or that she ever was contacted by medical staff regarding his treatment. ECF 67-4 at 351-56. Second, Mr. LaCroix argues Dr. Marthakis has denied him adequate treatment for "3.4 years" following his arm injury, and that he still is receiving inadequate treatment. ECF 74-2 at 24-25. But Mr. LaCroix doesn't explain how the treatment provided by Dr. Marthakis—pain medication, x-rays, a referral to an orthopedist, and following the orthopedist's recommendation of activity modification

8

and a home exercise program—was in any way inappropriate. *Id.* Mr. LaCroix suggests he should have been referred back to the orthopedist for a follow-up appointment (*Id.* at 25, 28-29), but it is undisputed Dr. Marthakis submitted an OPR for a follow-up appointment which was deferred by the Regional Medical Director. Mr. LaCroix also suggests "Physical Therapist Nate" told him he would likely need surgery to fix his arm. *Id.* at 24. But it is undisputed Mr. LaCroix's orthopedist recommended conservative management rather than surgery, and no reasonable jury could conclude it was "plainly inappropriate" for Dr. Marthakis to adopt the orthopedist's recommendation.

Accordingly, it is undisputed Dr. Marthakis treated Mr. LaCroix's arm injury by providing pain medication, ordering x-rays, sending him to an orthopedist, and following the orthopedist's recommendations, and Mr. LaCroix provides no evidence by which a reasonable jury could conclude this treatment was "plainly inappropriate." Therefore, summary judgment is warranted in favor of Dr. Marthakis on this claim.

For these reasons, the court:

(1) GRANTS the defendants' summary judgment motion (ECF 65); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Terry LaCroix and to close this case.

SO ORDERED.

July 24, 2024                    *s/ Damon R. Leichty*
                                 Judge, United States District Court